## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LOUISE IRVING,                                  :
                                                :
                    Plaintiff,                  :        Civil Action No.:     09-1794 (RMU)
                                                :
         v.                                     :        Re Document No.:      23
                                                :
D.C. PUBLIC SCHOOLS *et al.*,                   :
                                                :
                    Defendants.                 :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S
### MOTION FOR ATTORNEY'S FEES & COSTS

## I. INTRODUCTION

This matter comes before the court on the plaintiff's motion for attorney's fees and costs in the above-captioned matter. The plaintiff, the parent of a minor child who is entitled to the protections of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, commenced this action seeking $6,003.55 in attorney's fees that she incurred while prosecuting an administrative claim.[1] The defendants concede that the plaintiff prevailed in the administrative proceeding, but they dispute the reasonableness of the requested fees. Because the plaintiff is the prevailing party and because some of the requested fees are reasonable, the court grants in part the plaintiff's motion for attorney's fees and costs. The court denies in part the motion for attorney's fees, however, because the plaintiff has requested certain inappropriate fees and also because her IDEA fee petition contains certain deficiencies. Accordingly, the court grants the plaintiff an award of reduced fees.

---

[1]     Both parties miscalculated the balance due on the plaintiff's original invoice. The court will refer to the correct amount ($6,003.55) in its memorandum opinion.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The plaintiff's minor child is enrolled in the District of Columbia Public Schools ("DCPS") and falls under the protection of the IDEA.  Am. Compl. ¶ 4.  The plaintiff filed an administrative due process complaint against the DCPS and the District of Columbia on December 3, 2008, alleging that the defendants failed to provide a Free and Appropriate Public Education ("FAPE") to her child as required under the IDEA.  *Id.*  During the administrative proceeding, the plaintiff was represented by the Law Offices of Christopher N. Anwah.  *Id.*  After a hearing on the merits ("administrative hearing"), the hearing officer issued a Hearing Officer Determination ("HOD") granting the plaintiff the relief that she sought.  *Id.* at ¶ 5.  The plaintiff then submitted an IDEA fee petition for attorney's fees and costs to the defendants, seeking a total amount of $9,418.30.  Pl.'s Mot. at 1.  The defendants only reimbursed the plaintiff in the amount of $2,426.55, though, creating a difference of $6,003.55 between what the plaintiff believes she is owed and what the defendants have paid.[2]  *Id.* at 1; Defs.' Opp'n, Ex. A.  The plaintiff has submitted this same fee petition to the court.  The petition reflects the total amount of $9,418.30 that she believed she was owed, which includes the $6,003.55 that she contends is still due.

In August 2009, the plaintiff filed an action in the Superior Court of the District of Columbia, seeking to recover the outstanding balance of $6,003.55 on her IDEA fee petition.  Am. Compl. ¶ 4.  The defendants removed the action to this court in September 2009.  *See* Notice of Removal.  The plaintiff then filed an amended complaint in July 2010.  *See generally* Am. Compl.  After attempts at mediation proved unsuccessful, the plaintiff filed the instant motion for attorney's fees and costs.  *See generally* Pl.'s Mot.  With this motion ripe for consideration, the court turns to the parties' arguments and to the applicable legal standards.

---

[2]      The plaintiff conceded that $988.20 of the originally requested fees are not owed.  Pl.'s Mot. at 2.  The final attorney's fee award will therefore be reduced accordingly.

2

### III.  ANALYSIS

### A.  Legal Standard for Attorney's Fees Under the IDEA

Federal Rule of Civil Procedure 54(d) requires that a party seeking "attorney's fees and related non-taxable expenses" must file a motion with the court.  FED. R. CIV. P. 54(d)(2)(A).  The motion "must specify the judgment and the statute, rule, or other grounds entitling the movant to the award." FED. R. CIV. P. 54(d)(2)(B)(ii).  It must also state the amount sought in attorney's fees, or provide a fair estimate of such amount.  FED. R. CIV. P. 54(d)(2)(B)(iii); *see also Herbin v. District of Columbia*, 2006 WL 890673, at *2 (D.D.C. Apr. 4, 2006).

The IDEA allows the parents of a disabled child to recover "reasonable attorney['s] fees" if they are the "prevailing party."  20 U.S.C. § 1415(i)(3)(B).  Thus, when the court determines an appropriate amount of attorney's fees, it must engage in a two-step inquiry.  First, the court must determine whether the party seeking attorney's fees is the prevailing party.  *Id.*  A prevailing party "is one who has been awarded some relief by a court."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); *Alegria v. District of Columbia*, 391 F.3d 262, 264-65 (D.C. Cir. 2004) (applying *Buckhannon* in the IDEA context).

Second, the court should determine whether the attorney's fees sought are reasonable.  20 U.S.C. § 1415(i)(3)(B).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context).  An attorney's hourly rate for IDEA actions in the District of Columbia is typically considered reasonable if it conforms to the *Laffey* Matrix, a chart of hourly rates based upon attorneys' respective years of experience.  *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (citing *Kaseman v. District of Columbia*, 329 F.

Supp. 2d 20, 25 (D.D.C. 2004)); *see also* 20 U.S.C. § 1415(i)(3)(C) (stating that attorney's fees awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").

The plaintiff bears the burden of demonstrating that the number of hours that its counsel has spent on a particular task is reasonable. *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004). The plaintiff may satisfy this burden "by submitting an invoice that is sufficiently detailed [in order] to 'permit the District Court to make an independent determination [of] whether or not the hours claimed are justified.'" *Id.* (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)). Once the plaintiff has provided the court with such information, a "presumption arises [in the plaintiff's favor] that the number of hours billed is reasonable[,] and the burden shifts to the defendants to rebut the plaintiff's showing of reasonable hours." *Herbin*, 2006 WL 890673, at *5.

## B. The Court Grants in Part and Denies in Part the Plaintiff's Motion for Attorney's Fees

The plaintiff claims that she is entitled to attorney's fees in the amount of $6,003.55, and she submits an invoice in order to meet her burden of demonstrating that this amount is reasonable. Pl's Mot., Ex. A. The defendants essentially raise five challenges to rebut the plaintiff's calculation of such fees. First, they argue that the plaintiff's fee petition is unacceptably vague in that it fails to identify the activities of each attorney by name. Defs.' Opp'n at 6. Second, they contend that the plaintiff does not demonstrate the reasonableness of certain monetary charges that appear to be administrative, remote or vague. *Id.* at 15-18. Third, they challenge the reasonableness of plaintiff's counsel's hourly rates, arguing that the plaintiff failed to meet her burden of establishing her counsel's qualifications and experience. *Id.* at 7-8. Fourth, the defendants assert that the plaintiff is not entitled to the hourly rates under the *Laffey Matrix*, but rather, that rates dictated by DCPS Guidelines are appropriate. *Id.* at

4

9-10.  Finally, the defendants contend that the plaintiff's fee award is subject to a $4,000 fee cap under the District of Columbia Appropriations Act.  *Id.* at 2-4.  The court addresses each of the defendants' challenges in turn.

   As a preliminary matter, the court notes that the defendants do not dispute that the plaintiff is the prevailing party in the underlying IDEA suit.  *See generally* Defs.' Opp'n at 1.  Indeed, because the plaintiff succeeded on her claim in the administrative proceeding, she is the prevailing party and is therefore entitled to recover reasonable attorney's fees.  *See Buckhannon*, 532 U.S. at 603.

### 1.  The Reasonableness of the Number of Hours Billed by the Plaintiff's Counsel

### a.  Itemizing Each Attorney's Respective Tasks

   The plaintiff has submitted to the court an invoice for $6,003.55 that outlines her attorney's fees and costs.  Pl's Mot., Ex. A.  The defendants allege that the plaintiff's fee petition is unacceptably vague because in its itemization of her attorneys' tasks, it fails to identify by name the individual attorney who performed each respective task.  Defs.' Opp'n at 6.  By doing so, the defendants argue, the plaintiff has failed to adhere to the DCPS Guidelines for the Payment of Attorney Fees in IDEA Matters ("DCPS Guidelines"), which provide specific instructions as to how to submit a fee petition. *Id.* at 7.

   The plaintiff counters that she did comply with the DCPS Guidelines by including a "user summary" at the end of her invoice.  Pl.'s Reply at 3.  The summary lists the names of all staff members who worked on the case, the total number of hours that each expended on the case, each staff member's respective hourly rate, and the total dollar amount that each billed.  *Id.*  The plaintiff further contends that the DCPS Guidelines do not require identification of each individual attorney who performed specific legal activities, and that the defendants have offered no legal authority to establish this purported requirement.  *Id.* at 7.

A fee application must provide sufficient detail so as to allow the court to make an independent determination of whether the charges are reasonable.  *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327.  The plaintiff's invoice "'need not present the exact number of minutes spent[,] nor the precise activity to which each hour was devoted[,] nor the specific attainments of each attorney.'"  *Holbrook*, 305 F. Supp. 2d at 45 (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327); *see also Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006).  Yet a fee petition that does not identify the specific attorneys who performed each respective activity is considered insufficiently detailed.  *Gray v. District of Columbia*, 2011 WL 1561553, at *2 n.5 (D.D.C. Apr. 26, 2011).  Without such information, the court is unable to evaluate whether an attorney's hourly billable rate and billed hours are reasonable.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context).

Here, the plaintiff's failure to match the tasks with the respective attorneys who undertook them creates ambiguity as to whether the task was performed by an attorney or a paralegal.  Moreover, if the task was indeed carried out by an attorney, the plaintiff's failure to identify that person by name leaves uncertainty as to his or her level of experience.  Because the fee petition fails to provide sufficient detail as to who undertook each individual activity, the court cannot ascertain whether the hourly billing rate for each respective task is reasonable, and thus cannot determine whether the plaintiff's requested attorney's fees are reasonable.

Even if the plaintiff's fee petition is somewhat deficient, however, complete denial of fees is inappropriate.  *See Jordan v. Dep't of Justice*, 691 F.2d 514, 518-19 (D.C. Cir. 1982) (holding that complete denial of fees should be reserved for only extreme situations, such as when the petitioner offers no affidavits or timesheets, or when the application is filed in bad faith).  The court may, instead, reduce the overall fee award to account for such deficiencies.  *See Hensley*, 461 U.S. at 433 ("[w]here

the documentation of hours is inadequate, the district court may reduce the award accordingly"); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (reducing overall fee award by fifty percent where documentation of time records was deficient); *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (applying an overall reduction where time entries were inadequate). The court accordingly reduces the overall fee award by twenty-five percent to account for these and, as indicated below, other deficiencies in the plaintiff's fee petition.

### b. Clerical and Other Non-Professional Services

The defendants argue that the plaintiff's counsel inappropriately billed for clerical tasks, a type of activity that is not compensable under the IDEA. Defs.' Opp'n at 15. They therefore contend that the total 7.93 hours billed for administrative work should be disallowed from the plaintiff's fee petition, reducing the overall attorney's fees total by $1,204.94. *Id.* at 16. The plaintiff counters that these tasks were necessary, *de minimis* clerical functions that cannot be separated from clearly billable work. Pl.'s Mot. at 9-10.

Pure clerical tasks are not reimbursable in an award of attorney's fees. *See Role Models*, 353 F.3d at 973 ("purely clerical or secretarial tasks are not reimbursable at either attorney or paralegal rates") (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)); *Michigan v. Envtl. Prot. Agency*, 254 F.3d 1087, 1095-96 (D.C. Cir. 2001) (holding that "purely clerical tasks" are not reimbursable "because they ought to be considered part of normal administrative overhead"). By contrast, certain *de minimis* clerical tasks may be reimbursable if they cannot be separated from legal activities. *Cf. Lopez*, 383 F. Supp. 2d at 25 (explaining that charges for "filing" motions were not reimbursable because they were purely clerical, not *de minimis*).

In this case, the defendants declined to reimburse the plaintiff for activities such as "updated file and filing doc" and "conversation w/HOD." *See* Defs.' Opp'n, Ex. A at 3. Because these

activities were purely clerical, they are not compensable under the IDEA. *See Jackson v. District of Columbia*, 603 F. Supp. 2d 92, 98 (D.D.C. 2009) (denying reimbursement for charge described as "create file; made copies; faxed document"). The plaintiffs note that the defendants also refused to reimburse activities that were not obviously clerical, such as "reviewed file and discussed with Samar," and that they did not explain their reasoning for such refusals. *See* Pl.'s Mot., Ex. A; Defs.' Opp'n, Ex. A; *Gray*, 2011 WL 1561553, at *5 (stating that the defendant did not explain why tasks such as discussing the case with colleagues were considered clerical). These objections are of the "nit-picking" variety that this Circuit discourages. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1337-38; *see also Alfonso v. District of Columbia*, 464 F. Supp. 2d 1, 5-6 (D.D.C. 2006) (declining to "conduct a minute evaluation" of the plaintiffs' fee petition to determine reasonableness of every individual charge). Accordingly, rather than deny reimbursement for all charges that the defendants claim are clerical, the court has factored any purely clerical activities into its overall reduction of the total fee award.

### c. Charges for Activities Too Remote in Time From the Administrative Proceeding

The defendants ask the court to disallow certain charges which, they argue, are too remote in time from the administrative hearing. Defs.' Opp'n at 16-17. The plaintiff submitted for reimbursement for activities between August 18, 2008 and October 29, 2008. Pl.'s Reply at 10. These activities are related to the due process complaint that was later filed on December 5, 2008, and to the due process hearing that occurred on February 3, 2009. *Id.* The defendants contend that these activities should not be allowed because they are too remote in time from the February 2009 administrative proceeding. Defs.' Opp'n at 17. They therefore assert that 5.65 hours should be disallowed from the plaintiff's fee petition, reducing the total by $1,208.80. *Id.* The plaintiff responds that all legal activities for which she was charged are directly related and in close proximity to the

administrative proceeding.  Pl.'s Reply at 10.

Charges incurred a few months prior to an IDEA due process hearing are not too remote.  *See Cox v. District of Columbia*, 754 F. Supp. 2d 66, 77-78 (D.D.C. 2010) (holding that charges for work done less than five months before an IDEA due process hearing were reasonable); *Lax v. District of Columbia*, 2006 WL 1980264, at *4 (D.D.C. July 11, 2006) (holding that "time spent over the course of a year for a particular client" is reasonable, because the plaintiffs tied each charge to a subsequent hearing and it often takes up to a year for an administrative IDEA case to be resolved).  The disputed charges were incurred less than six months before the due process hearing, and are therefore reasonable.

### d.  Entries that are Vague and Lack Specificity

The defendants further contend that the descriptions of certain charges are so vague that they deprive the court of the ability to determine whether such hours were reasonably expended.  Defs.' Opp'n at 17.  The defendants therefore argue that 4.0 hours should be disallowed from the plaintiff's fee petition, reducing the total by an additional $905.00.  *Id.* at 18.  By contrast, the plaintiff insists that these charges are sufficiently detailed, and that including more detailed information would breach the rule of confidentiality.  Pl.'s Mot. at 11.

Although a fee request "need not present the exact number of minutes spent nor the precise activity to which each hour was devoted," the application must still be sufficiently detailed to allow the court to determine whether the hours claimed are reasonable.  *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327.  Where adequate time records are not kept, the court may reduce the overall fee.  *See Hensley*, 461 U.S. at 433.

The defendants object to entries such as "Telephone w/DCPS," "Conversation w/HOD," "Visit to Kimball ES" and "spoke with grandmother in prep for hearing."  *See* Pl.'s Mot., Ex. A; Defs.'

Opp'n, Ex. A.  These descriptions are unintelligible and therefore inadequate because they prevent the court from being able to make an independent determination of whether the hours expended behind such tasks are reasonable.  *See Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 124-25 (D.D.C. 2010) (holding that entries such as "conference with parent" and "telephone call to DCPS" were vague and reducing overall fee award by ten percent); *Clark v. District of Columbia*, 674 F. Supp. 2d 149, 158-59 (D.D.C. 2009) (holding that time entries such as "preparation for hearing" or "preparation for school visit" were too vague and reducing overall fee award by twenty-five percent); *Coleman v. District of Columbia*, 2007 WL 1307834, at *7 (D.D.C. May 3, 2007) (holding that entries such as "conference with co-counsel" lacked sufficient detail).  Accordingly, the court has factored the insufficient detail of the plaintiff's charges into its overall reduction of the total fee award.

### 2.  The Reasonableness of the Plaintiff's Hourly Rates

#### a.  The U.S. Attorney's Office *Laffey* Matrix is the Proper Means by Which to Determine Fee Awards

The plaintiff argues that the *Laffey* Matrix is applicable to IDEA cases.  *See* Pl.'s Mot. at 6.  She urges the court to adopt the Adjusted *Laffey* Matrix instead of the U.S. Attorney's Office *Laffey* Matrix, asserting that it is a better representation of prevailing market rates.  *See* Pl.'s Reply at 4.  The defendants, however, assert that the plaintiff is not entitled to *Laffey* rates, adjusted or otherwise, because IDEA proceedings are "not the type of complex federal litigation for which *Laffey* rates were adopted."  Defs.' Opp'n at 9.  Instead, the defendants insist, the DCPS Guidelines contain the appropriate fee schedule that should be applied ("DCPS fee schedule").  *Id.* at 10; Defs.' Opp'n, Ex. B at 3.  The plaintiff counters that the DCPS fee schedule is "grossly antiquated," and that it does not allow for any upward adjustment for standard of living increases or inflation.  Pl.'s Mot. at 5.

This court has previously held that attorney's fees in IDEA actions are presumptively reasonable if they conform to the *Laffey* Matrix.  *See Jackson v. District of Columbia*, 696 F. Supp. 2d

97, 102 (D.D.C. 2010) (holding that the *Laffey* Matrix is the proper formula to determine the prevailing

market rate for legal services rendered in connection with IDEA administrative proceedings).   Other

members of this court have reached similar conclusions.   *See, e.g.*, *Brown v. Jordan P.C.S.*, 539 F.

Supp. 2d 436, 438 (D.D.C. 2008) (holding that the plaintiffs' hourly rates were reasonable because

they conformed to the updated *Laffey* Matrix and were customary for similar cases); *Kaseman*, 329 F.

Supp. 2d at 25-26 (holding that the plaintiffs' counsel's rate was reasonable because it was below the

*Laffey* Matrix rate for attorneys of her experience); *Nesbit v. District of Columbia*, Civ. No. 01–2429,

at 1 (D.D.C. Nov. 4, 2003) (Order) (holding that a billing rate in accordance with the *Laffey* Matrix

was reasonable).

      Furthermore, this court has rejected the suggestion that IDEA administrative litigation is

categorically less complex than other forms of litigation, and reaffirms that IDEA cases are sufficiently

complex to allow application of the *Laffey* Matrix.   *See Jackson*, 696 F. Supp. 2d at 102 (holding that

IDEA administrative proceedings, which require expert testimony regarding whether a student has

been denied a FAPE, are sufficiently complex to warrant application of the *Laffey* Matrix); *Nesbit*, Civ.

No. 01–2429, at 1 (refusing to create an exception to the application of the *Laffey* Matrix for IDEA

litigation); *see also Cox*, 754 F. Supp. 2d at 76 (holding that counsel must have specialized knowledge

of the bureaucracy and practices of DCPS to handle IDEA cases).

      Similarly, this court has rejected the application of the DCPS fee schedule to determine

prevailing attorney rates for IDEA cases.   *See Jackson*, 696 F. Supp. 2d at 103 (declining to apply the

DCPS fee schedule because the defendant provided no evidence to show how it represented prevailing

market rates and because precedent supported application of the *Laffey* Matrix).   The defendants here

have not offered any evidence to indicate the methodology by which the DCPS fee schedule was

calculated, nor why it should be applied in this case.   *See Cox*, 754 F. Supp. 2d at 76 (holding that the

*Laffey* Matrix should apply because the defendant offered "no reasoned defense for its own Guidelines"). The court therefore declines to apply the DCPS fee schedule to this case.

With respect to the plaintiff's request to apply an adjusted *Laffey* Matrix, the court notes that two versions of the *Laffey* Matrix exist in the District of Columbia: the "U.S. Attorney's Office *Laffey* Matrix" and the "Adjusted *Laffey* Matrix." *See Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006); *see also Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (noting that "plaintiffs may point to such evidence as an updated version of the *Laffey* Matrix or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community"). The U.S. Attorney's Office Matrix "calculates the matrix rate for each year by adding the change in the overall cost of living, as reflected in the Consumer Price Index ("CPI") for the Washington, D.C. area for the prior year." *Smith*, 466 F. Supp. 2d at 156; U.S. Atty's Office for D.C. *Laffey* Matrix 2003-2010, http://www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited Aug. 8, 2011).

By contrast, the Adjusted *Laffey* Matrix, offered by the plaintiff, "calculates the matrix rates for each year by using the legal services component of the CPI rather than the general CPI on which the U.S. Attorney's Office Matrix is based." *See Smith*, 466 F. Supp. 2d at 156 (quoting *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14-15 (D.D.C. 2000). Although both matrices have been approved for use as evidence of prevailing market rates, this court has consistently applied the U.S. Attorney's Office *Laffey* Matrix. *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 104. Accordingly, the court adopts the U.S. Attorney's Office version of the *Laffey* Matrix, in order to determine the prevailing market rate for attorney's fees in this case.

### b. Applicable Rates for the Plaintiff's Attorneys

The defendants offer some additional objections to the plaintiff's requested hourly billing rates. First, they contend that because the plaintiff's fee petition is vague, they are unable to determine the

reasonableness of the rates that were used to calculate the amount of requested attorney's fees.  Defs.' Opp'n at 6-7.  Second, the defendants insist that the plaintiff has failed to meet her burden of establishing her counsel's qualifications and experience, asserting that the only pieces of evidence that she has provided are "conclusory allegations, insufficient to support an award" of attorney's fees.  *Id.* at 8.  Moreover, the defendants argue, the sworn declaration from one of the plaintiff's attorneys does not include information about whether the plaintiff's attorneys have been admitted to the District of Columbia Bar ("D.C. Bar"), nor any indication of the prevailing market rates that are enjoyed by special education attorneys.  *Id.* at 8-9.

The plaintiff, in turn, contends that the "user summary" at the end of her invoice provides sufficient detail by listing the name of each staff member who worked on the case, the total number of hours that each expended, their respective hourly rates, and the total dollar amount that each billed. Pl.'s Reply at 3.  Furthermore, she contends that her attorney's sworn declaration contains sufficient proof of her counsel's qualifications, and that she has satisfied her burden of establishing the reasonableness of her requested rates.  *Id.* at 3-4.

The party requesting attorney's fees must submit evidence showing "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community."  *See Covington*, 57 F.3d at 1107 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  The prevailing market rate in the *Laffey* Matrix is "but one of the elements needed to establish the reasonableness of a billing rate sought in a fee application."  *Jackson*, 696 F. Supp. 2d at 104; *see also Covington*, 57 F.3d at 1109 (holding that plaintiffs may provide evidence to supplement the *Laffey* Matrix, including fees awarded to attorneys with similar qualifications in comparable cases). The prevailing market rate "provide[s] merely a starting point" for determining the reasonableness of a billing rate.  *Jackson*, 696 F. Supp. 2d at 104.  The fee applicant should also submit evidence,

13

including affidavits, regarding her counsel's general billing practices and such counsel's skill, experience and reputation. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326. Once the plaintiff has met this burden, the defendant may then rebut the presumption of reasonableness by offering "specific contrary evidence." *Covington*, 57 F.3d at 1109.

In this case, the plaintiff submitted a sworn declaration from her attorney in support of her requested rates. *See* Decl. of Qualifications and Experience of Individual Special Educ. Legal Providers Employed by the Chris Anwah Law Firm ("Adewusi Decl."). The declaration attests to the attorneys' respective educational background, bar admission status, and special education experience and training. *See generally id.* The plaintiff also notes that the Chris Anwah Law Firm has been "practicing special education law exclusively since 1997." Pl.'s Mot. at 4. Although the plaintiff does not submit evidence regarding her attorneys' standard billing practices, the court concludes that the plaintiff has satisfied her burden of proving that her requested rates are reasonable. *See, e.g.*, *Alfonso*, 464 F. Supp. 2d at 6-7 (holding that the plaintiffs met their burden by "highlighting the experience and qualifications of plaintiffs' counsel's firm and the firm's long history of practice in this area of law"); *Kaseman*, 329 F. Supp. 2d at 26 (holding that the plaintiff established the reasonableness of her requested rate even though she did not attest to the "actual rates charged by lawyers who do similar work" nor to the "the reputations of plaintiffs' counsel").

By contrast, the defendants have not provided specific evidence to rebut this presumption of reasonableness, such as documentation of rates that are awarded in similar cases. *See Covington*, 57 F.3d at 1109-10 (citing *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326) ("in the normal case the [defendant] must either accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate"); *Brown*, 539 F. Supp. 2d at 438 (noting that the "defendant's vague allegations that the plaintiff's amounts are 'excessive' are insufficient to bar

recovery"); *Abraham v. District of Columbia*, 338 F. Supp. 2d at 124 (applying the *Laffey* Matrix where the defendant submitted no evidence to support its request to reduce rates).  Thus, the plaintiff has met her burden of providing evidence that shows her attorneys' skill, experience and reputation, and has therefore established a presumption of the reasonableness of the billing rates sought in her fee application.  The court will therefore evaluate each of her attorneys' respective hourly rates according to the U.S. Attorney's Office *Laffey* Matrix. [3]

The defendants also raise specific objections to the rates of each individual staff member listed on the plaintiff's invoice, each of which is addressed below.

### i. Shahida Hamlett

The plaintiff seeks an hourly rate of $250.00 for Shahida Hamlett, an attorney who was admitted to the D.C. Bar in July 2005.  Adewusi Decl. ¶ 4.  Attorney's fees are presumptively reasonable if they conform to the *Laffey* Matrix.  *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 102.  Hamlett performed work between August 2008 and February 2009; at the beginning of this period, she had been a member of the D.C. Bar for three years.[4]  *See* Pl.'s Mot., Ex. B.  The *Laffey* Matrix rate for an attorney with Hamlett's experience in 2008-2009 is $225.00.  "When the requested hourly rates are higher than those set forth in the *Laffey* Matrix, courts generally reduce the attorneys' hourly rates to the rates provided by the *Laffey* Matrix."  *Alfonso*, 464 F. Supp. 2d at 7.  The court accordingly reduces Hamlett's hourly rate to $225.00.

---

[3]     The plaintiff seeks an hourly rate of $350.00 for Christopher N. Anwah.  Adewusi Decl. ¶ 5.  Yet because the plaintiff's fee request does not include any charges relating to Anwah, it is not necessary to determine his appropriate hourly rate.

[4]     The *Laffey* Matrix calculates hourly rates based on the number of years that one has been out of law school.  U.S. Atty's Office for D.C. *Laffey* Matrix 2003-2010, http://www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited Aug. 8, 2011).  Because the plaintiff does not indicate when Hamlett graduated from law school, the court has calculated her appropriate hourly rate based on her bar admission date.

### ii.  Annie Pressley

The plaintiff seeks an hourly rate of $165.00 for Annie Pressley.  Adewusi Decl. ¶ 1.  Pressley is a "special education advocate/paralegal" who graduated from the University of the District of Columbia School of Law in "2004[-]2005."  *Id.*  Pressley is not a licensed attorney nor a member of the D.C. Bar.  Defs.' Opp'n at 12.  The defendants contend that the IDEA does not require the DCPS to pay for the services of educational advocates.  *Id.*  The plaintiff asserts, however, that section (h) of the DCPS Guidelines permits payment of fees to educational advocates.  Pl.'s Reply at 6.  The plaintiff further argues that attorneys require the services of paralegals and advocates in order to adequately represent their clients.  *Id.* at 7.

The court in *Bowman v. District of Columbia* held that court-appointed educational advocates may not recover attorney's fees under the IDEA.  496 F. Supp. 2d 160, 167 (D.D.C. 2007).  The educational advocates in *Bowman* were appointed by the court to make educational decisions for children who were wards of the district, so that the advocates effectively acted as "parents" under the IDEA.  *See id.*  Accordingly, even though they were licensed attorneys, they could not recover fees as educational advocates because they were not acting in an attorney-client capacity.  *See id.*

Pressley distinguishes from this scenario because she was employed by the Chris Anwah Law Firm, instead of being appointed by the court as an advocate.  *See* Adewusi Decl. ¶ 1.  Furthermore, Pressley's work on this matter was similar to that performed by the billing attorneys.  *See* Pl.'s Mot., Ex. B.  Yet because she is not a member of the D.C. Bar, Pressley is not entitled to attorney rates.  *See Dickens*, 724 F. Supp. 2d at 120 (holding that attorneys not admitted to the D.C. Bar are not entitled to reimbursement, but awarding fees at paralegal rates as equitable relief); *Agapito v. District of Columbia*, 477 F. Supp. 2d 103, 112-13 (D.D.C. 2007).  Pressley is described as a "paralegal" in the plaintiff's declaration, and the court accordingly reduces her hourly rate to $85.00, consistent with the

16

rate charged by paralegals at the Chris Anwah Law Firm.  *See* Adewusi Decl. ¶ 3; *Dickens*, 724 F.

Supp. 2d at 120 (awarding fees below *Laffey* rates because "[a]ctual billing practices factor into a

court's discretionary assessment of the reasonableness of rates").  Because this hourly rate is already

lower than that set forth in the *Laffey* Matrix, the court need not reduce the rate any further.

### iii.  Samar Malik

The plaintiff seeks hourly rates of $200.00 and $250.00 for Samar Malik.  Adewusi Decl. ¶ 2.

Malik was not admitted to the D.C. Bar during the period for which attorney's fees are sought.  Defs.'

Opp'n at 13.  The defendants thus contend that Malik's practice was not authorized.  *Id.*  Further, even

if it was authorized, they argue, the plaintiff has not provided sufficient evidence to suggest that Malik

possesses "a level of experience and skill, or an adequate reputation" to support a $200.00 or $250.00

billing rate.  *Id.*  The defendants request that the hours claimed for Malik should be reduced to reflect a

rate that is applicable to paralegals.  *Id.* at 14.

Attorneys who are not admitted to the D.C. Bar are not entitled to reimbursement at attorney

rates in IDEA proceedings.  *See Dickens*, 724 F. Supp. 2d at 120; *Agapito*, 477 F. Supp. 2d at 112-13.

Accordingly, the court reduces Malik's hourly rate to $85.00, the rate charged by paralegals at the

Chris Anwah Law Firm.  *See* Adewusi Decl. ¶ 3.  Because this hourly rate is already lower than that

set forth in the *Laffey* Matrix, the court need not reduce the rate any further.

### iv.  Mireya Amaya

The plaintiff seeks an hourly rate of $85.00 for Mireya Amaya, who is a paralegal.  Adewusi

Decl. ¶ 3.  The defendants do not object to this rate.  Defs.' Opp'n at 14.  Therefore, the court's award

reflects this hourly rate for Amaya.

**c. The Plaintiff's Fee Award is Subject to the Fee Cap**

The plaintiff argues that her fee award should not be affected by the District of Columbia Appropriations Act's $4,000 fee cap on attorney's fees awards. Pl.'s Mot. at 7. She reasons that Congress removed the fee cap for the "2008/2009" fiscal year, which started on October 1, 2008, and therefore, effective October 1, 2008, the fee cap no longer applies to attorney's fees awards. *Id.* In addition, the plaintiff notes that even as the defendants are limited by statute from paying more than the $4,000 fee cap, the court may still award fees in excess of that cap amount. Pl.'s Reply at 5.

The defendants, on the other hand, contend that the plaintiff's fee award is subject to the statutory fee cap. Defs.' Opp'n at 2. They acknowledge that the cap was recently lifted. *Id.* at 3. Yet despite this, they argue, the fee cap's enabling statute did not remove the pre-existing fee cap imposed on due process complaints that were filed prior to the statute's enactment on March 11, 2009. *Id.* Because the plaintiff's due process complaint was filed in 2008, before March 2009, they assert that the fee cap continues to apply. *Id.* The defendants concede that the court may make an award to the plaintiff above the fee cap, but insist that the plaintiff is not entitled to any additional fees above those already paid by the DCPS. *Id.* at 3-4.

The 2008 Consolidated Appropriations Act caps the District of Columbia's payment of IDEA attorney's fees at $4,000 per action. *See* Pub. L. No. 110-161, 121 Stat. 1844 (2007); *see also Blackman v. District of Columbia*, 633 F.3d 1088, 1089-90 (D.C. Cir. 2011). While the District of Columbia Appropriations Act of 2009 does not include the fee cap provision, it does provide that "none of the funds contained in this Act . . . may be made available . . . to pay the fees of an attorney who represents a party in or defends an IDEA proceeding which was initiated prior to the date of the enactment of this Act in an amount in excess of $4,000 for that proceeding." Pub. L. No. 111-8, 123 Stat. 524 (2009). The Act, therefore, lifted the fee cap for proceedings initiated after its March 11,

18

2009 enactment date, but barred the use of its funds to pay fees incurred in proceedings initiated before that date. *See id.*; *see also Blackman*, 633 F.3d at 1090.  Because the plaintiff's fee claim is based on an administrative proceeding initiated in 2008, i.e. before the enactment of the 2009 Act, it is still subject to the fee cap.  *See Blackman*, 633 F.3d at 1090 (holding that the termination of the fee cap did not affect litigation in progress when the fee cap was in effect).[5]

### d.  Summary of Fees Allowed

| Name | Hours | Requested Hourly Rate | Adjusted Hourly Rate | Amount Allowed |
|---|---|---|---|---|
| Shahidah  Hamlett | 26.75 | $250.00 | $225.00 | $6,018.75 |
| Annie Pressley | 1.32 | $165.00 | $85.00 | $112.20 |
| Mireya Amaya | 3.60 | $85.00 | $85.00 | $306.00 |
| Samar Malik | 2.5 and 7.91 | $250.00    and $200.00 | $85.00 | $884.85 |
| | | | Total Fees Owed Before Any Reductions | $7,321.80 |
| | | | Fees Owed After Deducting $988.20   Conceded   by Plaintiff | $6,333.60 |
| | | | **Total Awarded Fees After 25% Overall Reduction** | **$4,750.20** |

The court accordingly awards to the plaintiff a total of $4,750.20 in attorney's fees and costs, after the adjustments summarized in the chart above.  According to the parties, the defendants have already paid the plaintiff $2,426.55, leaving a total unpaid balance of $2,323.65.

---

[5]     Although the District of Columbia is statutorily limited in the award that it may pay, the court may award attorney's fees and costs greater than the cap.  *Calloway v. District of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000).  The court, however, cannot enforce the payment of any award above the fee cap amount.  *See Jackson*, 603 F. Supp. 2d at 96 (limiting the plaintiffs' recovery to $4,000 but noting that the court is not precluded from awarding fees above the cap); *see also Pullins-Graham v. District of Columbia*, 2004 U.S. Dist. LEXIS 27805, at **11-12 (D.D.C. Sept. 16, 2004) (holding that the defendants could not be held in contempt for failure to pay more than the fee cap amount because the court "cannot order the [d]efendants to violate an act of Congress to pay the total award").

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiff's motion for attorney's fees and costs.  An order consistent with this Memorandum Opinion is issued this 30th day of September, 2011.


RICARDO M. URBINA
United States District Judge